UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : Criminal No. 07-cr-220 |
| | : |
| MICHAEL HOOVER | : |
| | : |
| Defendant | : |

**GOVERNMENT'S MOTION FOR SECTION 5K1.1 DOWNWARD
DEPARTURE AND MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorneys, the Fraud Section of the Criminal Division of the United States Department of Justice, hereby submits its motion for a downward departure pursuant to U.S.S.G. section 5K1.1, together with its memorandum in aid of sentencing. The defendant accepted responsibility for his actions prior to the grand jury returning an indictment and entered a plea to one count of false reporting of natural gas trading information in violation of the Commodity Exchange Act, 7 U.S.C. § 13(a)(2). The Presentence Investigation Report (PSR) correctly calculates defendant's offense level under the 2002 United States Sentencing Guidelines at 13. For the reasons set forth herein, the defendant's substantial assistance to law enforcement in this investigation merits a five level downward departure.

I. **Argument**

The government moves for a five level downward departure under U.S.S.G. section 5K1.1. Defendant Hoover provided substantial assistance to the government during its criminal investigation of his former employer, AEP, and his co-conspirators, Joseph Foley and John Baggett, including:

(1) On three occasions in February and March 2003, at the beginning of the government's investigation into false reporting of natural gas trades at AEP, the defendant met with the FBI and

lawyers from the Department of Justice, the Commodities Futures Trading Commission and the Federal Energy Regulatory Commission. During these lengthy interviews, the defendant was truthful and forthcoming about his actions and the actions of his colleagues at AEP with respect to the false reporting of natural gas trading information to *Gas Daily* and *IFERC*. In particular, the defendant provided important information about the role and knowledge of managers at AEP and AEPES concerning the false reporting, as well as the scope of false reporting at AEP. The defendant also provided valuable information about the Phantom Equity Plan, a performance-based bonus plan whereby his supervisor, Foley, and others stood to benefit financially based on his trading desk's performance. As a result of this and other interviews, the FBI and the Fraud Section were able to advance and better focus their investigation of AEP. The information Mr. Hoover provided in February and March 2003 assisted the Department of Justice in obtaining a deferred prosecution agreement with AEPES in February 2005, in which AEPES admitted false reporting by its Gulf Desk traders and others, and agreed to pay a $30 million criminal penalty;

(2) In late 2006, the defendant was the "first in the door" and was committed to admitting guilt, taking full responsibility and entering a pre-indictment plea. Following his execution of a written plea agreement, defendant Hoover met again with the FBI and lawyers from the Fraud Section in order to cooperate against his remaining co-conspirator and former supervisor, Foley. The defendant traveled to Washington, DC to meet with the prosecutors and the agents in January 2007, and provided truthful, comprehensive and timely information to assist in the investigation of Foley and preparation for the Grand Jury. The defendant accurately reiterated the information he had provided in 2003 and he relayed additional information about Foley's knowledge and participation in the false reporting scheme. Specifically, the defendant described statements made by Foley

concerning the intended impact of the false reporting on the Gulf Desk's trading activity and the provided evidence of the way in which Foley directed Hoover to input false natural gas trading information into spreadsheets and send them via interstate wire to *IFERC* in Washington, DC. This information was critical to the government's effort to establish Foley's actions and his intent;

(3) The defendant also facilitated conversations with his co-defendant Baggett and encouraged him to enter a plea. Regardless of Baggett's decision, the defendant expressed his willingness to cooperate and testify at trial against Foley and Baggett, if necessary. The defendant's timely entry of a plea prompted Baggett and later Foley to plead guilty prior to indictment; and

(4) As a result of the defendant's timely entry of a plea and cooperation, together with the guilty plea of his co-conspirator, Baggett, Foley ultimately entered into a plea agreement and admitted his participation in a conspiracy to report false trading information while heading the Gulf Desk at AEP. Prior to the defendant and Baggett's entry of a plea and cooperation, Foley had refused to admit his culpability or acknowledge the extent of his involvement in the false reporting conspiracy. Further, Foley had never engaged in any plea discussions with the government. Based on conversations with counsel, the government learned that the defendant and Baggett's timely entry of a plea and their willingness to testify against Foley at trial played a major role in influencing Foley's decision to forego indictment and enter a plea of guilty. The defendant's plea and post-plea cooperation was pivotal in the government's ability to secure a guilty plea from Foley, the last target in this case, and avoid having to try the matter.

When weighing what sentence is reasonable and appropriate in the defendant's case, there are several factors that merit consideration. Mr. Foley – not defendant Hoover – was the principal actor in this scheme. The defendant furthered the conspiracy at Foley's instruction and received

little, if any, personal or financial benefit as a result of his role in the false reporting. None of this minimizes the severity of the defendant's misconduct in this case but rather puts this misconduct in the proper perspective. Defendant Hoover is currently at an offense level 13. A five level reduction, together with the fact that the defendant has a criminal history category of 1, would make him eligible for a probationary sentence under the Guidelines. This is a reasonable sentence under the circumstances.

II. **Restitution**

The government agrees with probation that restitution is not an issue in this case because there are no readily identifiable victims.

II. **Conclusion**

For the reasons set forth herein, the government requests a five level downward departure pursuant to U.S.S.G. section 5K1.1 as a result of the defendant's substantial assistance to law enforcement in this investigation.

Respectfully submitted,

STEVEN A. TYRRELL
CHIEF, FRAUD SECTION

By: _____
ROBERTSON PARK
AMANDA RIEDEL
TRIAL ATTORNEYS
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., N.W.
Washington, D.C. 20530
(202) 514-4335, (202) 514-0930

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing was served by ECF filing upon the following counsel of record:

David Schertler, Esquire.

this \_\_\_\_ day of April, 2007

                                         AMANDA L. RIEDEL
                                         TRIAL ATTORNEY