IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, :
:
v. : Docket No. 1:07-cr-20
:
MICHAEL HOOVER, : The Honorable John D. Bates
: Sentencing: May 14, 2007
Defendant. :

**<u>DEFENDANT=S SENTENCING MEMORANDUM AND POSITION
WITH RESPECT TO SENTENCING FACTORS AND
REPLY TO GOVERNMENTS MOTION FOR A DOWNWARD DEPARTURE</u>**

COMES NOW the Defendant, Michael Hoover, through counsel, and submits this sentencing memorandum to further assist the Court in determining a fair and just sentence in this matter.

On February 21, 2007, Mr. Hoover pled guilty to a one count criminal information charging him with filing false information intended to affect the price of natural gas in violation of the Commodity Exchange Act, 7 U.S.C. ' 13(a)(2). He fully accepts responsibility for his actions and is prepared to satisfy the terms of any sentence imposed by this Court. Mr. Hoover began cooperating with the government=s investigation of AEP in February of 2003 and submitted to three separate debriefings. Once the government determined that criminal charges would be brought against him, Mr. Hoover gave timely notice of his intent to plead guilty. He then underwent additional debriefing at the Department of Justice. Following entry of his plea, Mr. Hoover met with the Probation Department and provided the information needed to prepare a complete presentence report. He has also complied with all conditions of pretrial supervised release.

1. **Corrections and objections to the Presentence Report.**

Mr. Hoover has no corrections or objections to the facts contained in the presentence report. The Sentencing Guidelines were correctly calculated in accordance with Mr. Hoover=s plea agreement with the government.

2. **Position of the defendant regarding sentence and the government=s ' 5K1.1 motion of a downward departure.**

Mr. Hoover requests that the Court accept the parties= Guidelines stipulation, grant the five level downward departure requested in the government=s ' 5K1.1 motion, and impose a sentence of probation in accordance with the low end of the resulting sentencing range.

Mr. Hoover recognizes that his participation in this scheme to manipulate natural gas= trading price was a serious criminal act. He is remorseful and deeply embarrassed by his conduct. Mr. Hoover has no prior criminal history. He is a forty-five year old man with a college education and an excellent work history. Before he was drawn into this price-fixing scheme at AEP, he was a well-established supply controller and trader in the natural gas industry.

Mr. Hoover was initially hired at AEP because the company needed someone with experience managing the physical flow of natural gas through the pipeline network the company had recently acquired. His primary responsibility at AEP was to manage the amounts of natural gas moving through the pipeline so as to maximize the network=s efficiency. To accomplish this, Mr. Hoover had some authority to buy and sell natural gas. These Aphysical trades@, however, were designed solely to optimize the efficiency of the pipeline. Mr. Hoover=s daily duties did not involve the more speculative Afinancial@ or Abasis@ trading of natural gas on the open market for profit.

Such financial trades were handled by Mr. Hoover=s immediate supervisor, Joseph Foley, AEP=s lead basis trader on the Gulf Desk. Managing these types of speculative trades is a difficult and time-consuming task which requires constant monitoring of the market. Following deregulation of the energy markets, such trades also became highly lucrative. To compensate its basis traders, AEP put a five-year incentive plan in place. This plan was known as the APhantom Equity Plan@ and involved a payout of $240 million to be split among 40 AEP traders. Mr. Foley was a participant in this plan. In 2002, he was authorized to receive over $1 million from the plan. Mr. Hoover was not eligible to participate in the plan.

Due to the constraints trading placed on his time, Mr. Foley assigned Mr. Hoover the task of preparing his trade reports for transmittal to *IFERC* and *Gas Daily*, publications which gathered data throughout the gas industry in order to determine the various index prices for natural gas. To prepare these reports, Mr. Foley gave Mr. Hoover a list of the trades he had actually performed. He then told Hoover to add fictitious trades to the list in order to achieve a price average that was more favorable to the Gulf Desk=s position in the market. Mr. Hoover prepared the lists as instructed and passed them on for submission to the publications.

In 2002, Mr. Hoover received a salary of $110,000 and a bonus of $135,000[1] from AEP=s general bonus fund. Mr. Hoover understood that his bonus was determined based upon the company=s overall profitability and the quality of his work. Mr. Hoover never received a detailed explanation of how his bonus was calculated, but he was never led to believe it was

---

[1] This figure was the basis for the parties= stipulation that a loss in excess of $120,000 should be used to calculate Mr. Hoover=s Guidelines. In actuality, it is difficult (if not impossible) to calculate what economic loss was inflicted on the market as a result of false price reporting.

based upon the Gulf Desk=s trading successes. In sum, Mr. Hoover had no expectation that his role in reporting trade price data would directly benefit him financially.

When the natural gas industry=s trading practices came under investigation, AEP conducted an internal investigation to determine if its employees had engaged in wrongdoing. As part of this investigation, Mr. Hoover was contacted in October of 2002. Mr. Hoover admitted his role in preparing false trade data. He was fired the next day. As a result, obtaining new employment in the gas industry was exceedingly difficult. In October of 2003, Mr. Hoover managed to secure employment as a fuel supply coordinator with Seminole Electric in Tampa, Florida. However, following his conviction in this case, he was terminated. He is currently unemployed and living with his parents in Waller, Texas.

Mr. Hoover was brought into this conspiracy at the direction of his boss. He participated in the filing of false data solely to satisfy Mr. Foley=s demands. Unlike Mr. Foley, Mr. Hoover was not in a position to profit directly from the Gulf Desk=s market position. He was not motivated by greed; he was only trying to do his job well by meeting his boss= demands. As soon as the criminal implications of this conduct became apparent, Mr. Foley admitted his involvement. As a result, Mr. Foley lost his job and had to move twice to obtain work. At this time, he has completely lost his professional livelihood.

3. **Conclusion.**

Given his low-level of involvement in this conspiracy, his timely acceptance of responsibility and substantial assistance to the government, and the steep professional price he has already paid, a sentence of probation is appropriate at this time. Mr. Hoover therefore joins in the government=s ' 5K1.1 motion and respectfully asks that his Guideline range be reduced

five levels and that he be sentenced to the low-end of the resulting range.

Respectfully submitted,

MICHAEL HOOVER
By Counsel

_____
Douglas R. Kay
James W. Hundley (admitted *pro hac vice*)
BRIGLIA & HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
703-883-0880

## CERTIFICATE OF SERVICE

I, Douglas R. Kay, hereby certify that a true copy of the foregoing Sentencing Memorandum and Reply to Government's Motion for a Downward Departure was served via first-class mail on the following individuals at the listed addresses:

Amanda Riedel, Trial Attorney
Fraud Section
Criminal Division
United States Department of Justice
Washington, D.C. 20530

_____
Douglas R. Kay